Letitia C. Abromats
750 U.S. Highway 14
Greybull, WY  82426
307-765-4518
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **on relation of ROY PACK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE No. 15-cv-185-F** |
| | ) | |
| **vs.** | ) | |
| | ) | **JUDGE FREUDENTHAL** |
| **MAUREEN HICKEY,** | ) | |
| | ) | **MAGISTRATE JUDGE RANKIN** |
| **and** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **CLOUD PEAK INITIATIVES, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |


## RELATOR'S BRIEF IN SUPPORT OF MOTION TO RECONSIDER UNDER FRCP 59(E)

COMES NOW Relator, Roy Pack, by and through his attorney, Letitia Abromats, and hereby respectfully submits his brief in support of his Motion to reconsider this Court's exclusion of evidence and grant of summary judgment, DE # 95.  With the reconsidered evidence properly admitted, the Court is respected to order a second round of summary judgment briefs so the parties can weigh in on its effect on the case's worthiness for trial.

1

## ARGUMENT

### I.   A MOTION TO RECONSIDER UNDER RULE 59(e) IS WELL GROUNDED

"A motion for reconsideration of an order granting summary judgment or dismissal is essentially the same as a Rule 59(e) motion to alter or amend judgment." *National Union Fire Ins. Co. v. Midland Bancor, Inc.*, 869 F. Supp. 880, 883 (D. Kan. 1994). "Rule 59(e) "applies to cases involving summary judgment as well as those involving judgment after trial." *Herrera v. City of Albuquerque*, 674 F. Supp.2d 1271, 1276 (D.N.M. 2008) (quoting *Servants of the Paraclete, Inc. v. Great American Ins. Co.*, 866 F. Supp. 1560, 1581 (D. N.M. 1994), *aff'd sub. nom. Servants of the Paraclete v. Does*, 204 F.3d 1005 (10th Cir. 2000)).

"Rule 59(e) relief is available in limited circumstances, including (1) an intervening change in the controlling law, (2) when new evidence previously was unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Hayes Family Trust v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1004 (10th Cir. 2017) (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)); *accord Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1153 (10th Cir. 2012). *See also Sinclair Wyo. Ref. Co. v. Infrassure Ltd.*, No: 15-CV-194-F, 2017 U.S. Dist. LEXIS 121390, *14 (D. Wyo. May 25, 2017) (granting motion); *Jones v. Castellucci*, 13-CV-203-F, 2014 U.S. Dist. LEXIS 192013, *3 (D. Wyo. July 16, 2014); *Osborn v. Lampert*, No. 12-CV-139[-F], 2013 U.S. Dist. LEXIS 196186, *2 (D. Wyo. Feb. 12, 2013); *LNV Corp. v. Shepherd*, No. 10-CV-56-F, 2010 U.S. Dist. LEXIS 147541, *2 (D. Wyo. Sept. 22, 2010); *Georgia-Pacific, LLC v. Diversified Transfer & Storage, Inc.*, No. 10-CV-83-F, 2010 U.S. Dist. LEXIS 146856, *2 (D. Wyo. Sept. 22, 2010). "Rule 59(e) relief is appropriate only where the court has misapprehended the facts, a party's position, or the controlling law." *Barber v. Colorado*, 562 F.3d 1222, 1228 (10th Cir. 2009) (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)); *Jones v. Castellucci*, 13-CV-203-F, 2014 U.S. Dist. LEXIS

192013, *3 (D. Wyo. July 16, 2014); ); *Osborn v. Lampert*, No. 12-CV-139[-F], 2013 U.S. Dist. LEXIS 196186, *2  (D. Wyo. Feb. 12, 2013).

Accordingly. "[t]he court "will not alter a trial court's decision unless it can be shown that the court's decision was an arbitrary, capricious, whimsical, or manifestly unreasonable." *Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1152 (10th Cir. 2012) (quoting *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1236 (10th Cir. 2001)).  Nevertheless, one respected treatise opines:

> In all circumstances, an earlier ruling may come to seem wrong. Self-correction is manifestly important if the alternative is the greater delay and expense that would result from persisting in the error and eventual appellate reversal. Even if reversal is not likely, the trial court will prefer to reach a just result.

*Libretti v. Courtney*, No: 14-CV-0107 SWS, 2015 U.S. Dist. LEXIS 184859, *4 (D. Wyo. Mar. 11, 2015) (Carman, M.J.) (quoting 18B Wright & Miller, 18B FED. PRAC. & PROC. JURIS. § 4478.1 (2d ed.)).

In deciding a Rule 59(e) motion, a "district court abuses its discretion if it made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances. The abuse-of-discretion standard "includes review to determine that the discretion was not guided by erroneous legal conclusions." *Hayes Family Trust v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1004-05 (10th Cir. 2017) (quoting *ClearOne Commc'ns v. Biamp Sys.*, 653 F.3d 1163, 1178 (10th Cir. 2011), and *Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1274-75 (10th Cir. 2005)).  *Accord Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1228 (10th Cir. 2016) (erroneous legal conclusions)**;** *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1201-02 (10th Cir. 2012) (same)**;** *Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1200 (10th Cir. 2011) ("A Rule 59(e) motion is the appropriate vehicle 'to correct manifest errors of law or to present newly discovered evidence.");

*Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997) (quoting *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir. 1992))."); *Rogers v. Andrus Transp. Servs.*, 502 F.3d 1147, 1153 (10th Cir. 2007) (erroneous legal conclusions); *Adams v. Reliance Std. Life Ins. Co.*, 225 F.3d 1179, 1186 n.5 (10th Cir. 2000) (manifest errors of law)**;** *Benne v. IBM Corp.*, 87 F.3d 419, 428 (10th Cir. 1996) (same); *Webber v. Mefford*, 43 F.3d 1340, 1345 (10th Cir. 1994) (same)**;** *see also Northern Arapaho Tribe v. Ashe*, 925 F. Supp.2d 1206, 1219 (D. Wyo. 2012) (Johnson, J.) (similar).   "A manifest error [of law] is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000); *accord Yellowbear v. Newell*, No. 14-CV-059-J, 2014 U.S. Dist. LEXIS 194272, * 2 (D. Wyo. Dec. 16, 2014) (citing *Oto*).

Thus, it can be said with certainty that "a motion under Rule 59(e) allows a party to reargue <u>previously articulated</u> positions to correct clear legal error." *Hayes Family Trust v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1005 (10th Cir. 2017) (emphasis added); *accord Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1152 (10th Cir. 2012) (quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997) ("[A] motion will be considered under Rule 59(e) when it involves reconsideration of matters properly encompassed in a decision on the merits.")).  *Contra Steele v. Young*, 11 F.3d 1518, 1520 n.1 (10th Cir. 1993) ("Rule 59(e) cannot be used to expand a judgment to <u>encompass new issues which could have been raised</u> prior to issuance of the judgment.") (emphasis added); *Stuarte v. Colorado Interstate Gas Co.*, 130 F. Supp.2d 1263, 1269 (D. Wyo. 2001) (Brimmer, J.) ("Motions to alter or amend judgment can't be used "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment.")

*Breen v. Pruter*, No: 14-CV-081-F, 2015 U.S. Dist. LEXIS 179145, 2015 WL 11051022 (D. Wyo. Feb. 23, 2015), is not to the contrary.   There, undersigned counsel was trying to convince the Court that Breen's interpretation of a California consumer protection statute was the correct one, and that the Court had erred in its previous ruling construing it.   *See Breen v. Pruter*, No: 14-CV-081-F, 2014 U.S. Dist. LEXIS 187053, *3-*13, 2014 WL 11485243 (D. Wyo., Dec. 16, 2014).   Undersigned counsel made the argument that the Court had misconstrued the principles of how ambiguous state law should be construed, but could show no manifest error of state law from the California Supreme Court that this Court engaged in.   Hence the motion was denied, and, on appeal, the Tenth Circuit also found the law to be ambiguous.   *See Breen v. Pruter*, 679 Fed. App'x 713 (10th Cir. 2017).   In retrospect, the Rule 59(e) motion in *Pruter should* have been denied.   Here, however, Relator is presenting black-letter, well-settled law from the Tenth Circuit, a different matter than the ambiguous statutory interpretation in *Pruter*.

Neither is *Queen v. TA Operating, LLC*, No. 10-CV-170-F, 2011 U.S. Dist. LEXIS 159131 (D. Wyo. 2011). There, the plaintiffs claimed manifest errors of law, *id.*at *2. Unfortunately for plaintiffs, they cited only one Tenth Circuit case, and otherwise relied on law from other circuits, notwithstanding binding Tenth Circuit authority to the contrary.   This Court correctly opined that it was "disingenuous to argue the Court committed manifest error of law when Plaintiffs' position is not supported, even slightly, by Tenth Circuit authority."   *Id.* at *3-*4.   In contrast, Relator's argument is grounded almost entirely by Tenth Circuit authority that has been settled for decades.

In this motion for reconsideration, Relator previously argued that he had personal knowledge sufficient to admit his affidavit for summary judgment purposes, and that any hearsay was still admissible because it was not sought to be admitted for its truth.   This Court, with scant

analysis, concluded otherwise and struck most of Relator's affidavit.  This motion, then, is based on a fundamental misunderstanding and misapplication of well-settled evidentiary law, which, if uncorrected, would cause manifest injustice; indeed, a miscarriage of justice.  Additionally, this motion is based on a failure to consider supplemental authority that was submitted to the Court

**II.**   **IT WAS A MANIFEST ERROR OF LAW TO STRIKE RELATOR'S AFFIDIVIT**

**A.**   **A WITNESS AFFIDAVIT CAN ONLY BE STRICKEN ON SUMMARY JUDGMENT IF IT IS IMPOSSIBLE– NOT JUST IMPROBABLE OR UNLIKELY –THAT HE COULD HAVE OBSERVED WHAT HE CLAIMS KNOWLEDGE OF**

"An affidavit or declaration used to support or oppose a motion for summary judgment must be made on personal knowledge. If the affiant or declarant <u>could not</u> have perceived or observed what he or she testified to, he or she could not have personal knowledge. In that event, the court will not consider the affidavit or declaration." 11-56 MOORE'S FED. PRAC. – CIV. § 56.94[2][b] (2017) (emphasis added).  *Accord* Weinstein's Fed. Evid. § 602.03[1][c] (2014) ("The judge retains the power to reject testimony if it could not reasonably be believed, that is, as a matter of law no trier of fact could find that the witness actually perceived the event about which he or she is testifying.  The test has been termed a test of "impossibility[.]").

This principle of law is well-settled in this circuit.  *See United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1132 (10th Cir. 2014) (standard not difficult to meet); *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997); *accord United States v. Mixon*, 979 F. Supp. 1386, 1390 (D. Kan. 1997); *Barto v. Armstrong World Indus.*, 923 F. Supp. 1442, 1445 (D.N.M. 1996) (absolute certainty of observation or recollection not required).

It is equally well-settled in federal courts around the country.  *See United States v. Franklin*, 415 F.3d 537, 549 (6th Cir. 2005) (low admissibility threshold); *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir. 1990); *United States v. Rodriguez*, 162 F.3d 135, 144 (1st Cir.

1998) (personal knowledge can include inferences and opinions); *M.B.A.F.B. Fed. Credit Union v. Cumis Ins. Soc.*, 681 F.2d 930, 932-33 (4th Cir. 1982) (certainty not required); *New Eng. Envtl. Techs. Corp. v. American Safety Risk Retention Group, Inc.*, 810 F. Supp.2d 390, 395-96 (D. Mass. 2011); *United States v. Ayewoh*, 587 F. Supp.2d 378, 383-84 (D.P.R. 2008) (matter of weight, not admissibility; jury entitled to draw inferences), *aff'd*, 627 F.3d 914 (1st Cir. 2010); *Zakre v. Norddeutsche Landesbank Girozentrale*, 396 F. Supp.2d 483, 504 (S.D.N.Y. 2005) (affiant can testify to impressions, and conclusions based on personal observations over time); *Pashoian v. GTE Directories*, 208 F. Supp.2d 1293, 1300 (M.D. Fla. 2002); *Colabufo v. Cont'l Cas. Co.*, No. 04-CV-1863, 2006 U.S. Dist. LEXIS 28957, *18-*20, 2006 WL 1210919 (E.D.N.Y. Apr. 27, 2006).  "Most knowledge is inferential, [and] personal knowledge [therefore] includes opinions and inferences grounded in observations or other first-hand experiences." WEINSTEIN'S FED. EVID. § 602.02[1] (2015).

Accordingly, whatever burden was on Relator to show how he knew what he claimed to know or have observed personally, it was a very light one, and he met it easily.[1]  Accordingly, it was a manifest error of law for this Court to strike portions of his affidavit on that basis.

## B. RELATOR'S POSITION WITH CLOUD PEAK PRESUMES HIM TO HAVE HAD KNOWLEDGE OF THE CORPORATION'S AFFAIRS

> "Sometimes personal knowledge may be inferred from the content or context of the affidavit.… [C]orporate officers are presumed to have personal knowledge of acts of their corporation. Likewise, employees who are familiar with the record-keeping practices of a business are qualified to speak from personal knowledge that particular documents are admissible business records, and affidavits sworn by such employees constitute appropriate summary judgment evidence, even if they were not employed at the time the record was created."

---

[1]Further, some courts apply a lower burden for affidavits filed in opposition to summary judgment than they do for those seeking it.  *See Brooks v. Stringer*, No. 04-CV-120, 2007 U.S. Dist. LEXIS 26756 *8-*9 , 2007 WL 1087487 (S.D. Miss. Apr. 10, 2007); *Monroe v. Board of Educ.*, 65 F.R.D. 641, 648 (D. Conn. 1975).  This Court should do likewise.

11-56 Moore's Fed. Prac. – Civ. § 56.94[2][b] (2017).

This is also, a bedrock, settled principle of law, and it also applies to non-officer employees who are in a position, because of their jobs, to observe things.  The seminal case on the topic is *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990), which Relator cited in his initial brief (DE # 88, at 11), but the Court ignored.  It has also been recognized by the Tenth Circuit, albeit in an unpublished opinion.  *See Pipkin v. Mortgage Creditcorp*, No. 94-6443, 1995 U.S. App. LEXIS 35462, *12 n.4 (10th Cir. Dec. 18, 1995) (unpublished) (citing *Barthelemy*).  District courts in this circuit have followed the same rule. *See Univ. of Kan. v. Sinks*, 565 F. Supp.2d 1216, 1227-28 (D. Kan. 2008); *Benavidez v. United States*, No. 95-823, 1997 U.S. Dist. LEXIS 22749, *4-*11  (D.N.M. Jan. 15, 1997) (personal knowledge includes inferences).

So many other federal courts outside the Tenth agree with this principle that – like qualified immunity being defeated in a section 1983 case because the law of virtually the entire nation can make the law clearly established – so, too, here, federal courts in every regional circuit have adopted the rule such that it is not open to doubt.  A "roll call" of the circuits demonstrates this.  *See United States v. Castro*, 89 F.3d 1443, 1454 (11th Cir. 1996); *Action Outdoor Adver. JV, LLC v. City of Destin*, No. 03cv426, 2005 U.S. Dist. LEXIS 29837, *18-*20 (N.D. Fla. Sept. 23, 2005); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990); *Edwards v. Toys "R" Us*, 527 F. Supp.2d 1197, 1201-02 * n.5 (C.D. Cal. 2007) (permissible to infer from affiants corporate position his knowledge of its business records); *United States v. Smith*, 591 F.3d 974, 982-83 (8th Cir. 2010) (perceptions based on industry suspicion permissible); *Progressive Cas. Ins. Co. v. FDIC*, 80 F. Supp.3d 923, 935-36 (N.D. Iowa 2015) (impressions based on affiant's state of mind admissible, regardless of source);

*United States v. Wirtz*, 357 F. Supp.2d 1164, 1169-70 (D. Minn. 2005) (opinions and inferences admissible if based on affiant's perception); *Visser v. Packer Engineering Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) (Posner, J.) (but excluding evidence on other grounds); *Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp.2d 863, 868 (E.D. Wis. 2005); *United States v. Kerley*, 784 F.3d 327, 336-38 (6th Cir. 2015) (retrospective business practices admissible); *White v. MPW Indus. Servs.*, 236 F.R.D. 363, 369 (E.D. Tenn. 2006) (personal knowledge of business policy based on hearsay admissible); *Oster v. Huntington Bancshares Inc.*, No. 15-cv-2746, 2017 U.S. Dist. LEXIS 76651, *30-*33  (S.D. Ohio May 19, 2017); *Odom v. GLA Collection Co.*, No. 14-CV-387, 2015 U.S. Dist. LEXIS 81640 *8-*9, 2015 WL 3892350 (W.D. Ky. June 24, 2015); *Smith v. Liberty Life Ins. Co.*, 535 F.3d 308, 314-15 (5th Cir. 2008); *DIRECTV Inc. v. Budden*, 420 F.3d 521, 530 & nn. 40, 43 (5th Cir. 2005) (no "magic words" required in affidavit for it to be based on personal knowledge; *FDIC v. Patel*, 46 F.3d 482, 484 (5th Cir. 1995); *Brooks v. Stringer*, No. 04-CV-120, 2007 U.S. Dist. LEXIS 26756 *8-*9 , 2007 WL 1087487 (S.D. Miss. Apr. 10, 2007); *United States v. Smith*, 451 F.3d 209, 222-23 (4th Cir. 2006);  *United States v. Rocky Mt. Holdings, Inc.*, 782 F. Supp.2d 106, 114-15 (E.D. Pa. 2011); *Bell v. Owens-Ill., Inc.*, No. 00-1518, *17, *26, 2002 U.S. Dist. LEXIS 26481 (W.D. Pa. Aug. 29, 2002) (Wilshire Aff.), *reconsideration denied*, 2002 U.S. Dist. LEXIS 26480 (W.D. Pa. Oct. 1, 2002); *Monroe v. Board of Educ.*, 65 F.R.D. 641, 648 (D. Conn. 1975) (Shapiro Aff.); *United States v. Munoz-Franco*, 487 F.3d 25, 34-36 (1st Cir. 2007); *Ondis v. Barrows*, 538 F.2d 904, 907 n.3 (1st Cir. 1976); *Antonelli v. Fed. Bureau of Prisons*, 591 F. Supp.2d 15, 28 n.4  (D.D.C. 2008); *Thomas v. Paulson*, 507 F. Supp.2d 59, 79-80 (D.D.C. 2007).

This rule is broad enough to encompass affidavits establishing the routine practices of a corporation under Fed.R.Evid.406. *See Hancock v. AT&T Co.*, 701 F.3d 1248, 1261-64 (10th Cir.

2012) (personal knowledge not required, *id.*at 1264); *Warren v. Liberty Mut. Fire Ins. Co.*, 555 F.3d 1141, 1145 (10th Cir. 2009); *Morris v. Travelers Indem. Co.*, 518 F.3d 755, 760-61 (10th Cir. 2008); *Federal Kemper Life Assur. Co. v. Ellis*, 28 F.3d 1033, 1039 n.6 (10th Cir. 1994).

Accordingly, this Court committed a manifest error of law when it excluded portions of Relator's affidavit that his position within Cloud Peak would have given him at least an inference of personal knowledge regarding.

## C.   THE STATE OF MIND OF ANOTHER CAN BE ADMISSIBLE BY AFFIDAVIT

There is no rule of law that an affiant can never know or infer, for summary judgment purposes by affidavit, the mental state of another, as long as he can show how the knowledge or inference was acquired.   *See Kehoe v. Anheuser-Busch, Inc.*, 995 F.2d 117, 119 n.3 (8th Cir. 1993); *Progressive Cas. Ins. Co. v. FDIC*, 80 F. Supp.3d 923, 934-35, 936 (N.D. Iowa 2015); *Marsh v. Hog Slat, Inc.*, 79 F. Supp.2d 1068, 1074 (D. Iowa 2000).   Here, for example, it is quite reasonable for Relator to know what Hickey knew about the regulations covering Medicaid when he sat in the same training session with her while that knowledge was being taught.   It was therefore wrong to exclude Relator's affidavit testimony about anything he says Hickey knew.

## D.   IT WAS WRONG TO EXCLUDE PARTS OF THE AFFIDAVIT AS HEARSAY

"[W]hen [a] statement is offered for a non-hearsay purpose, it is relevant that the statement was made; and the cross-examiner can question the in-court witness who heard the statement….   The proponent can escape the [hearsay] rule by offering the evidence for any nonhearsay purpose and the only limitations on the possible nonhearsay purposes are the doctrine of relevance and the attorney's imagination."   1-10 COURTROOM CRIM. EVID. § 1004 (2016). "[One] nonhearsay purpose is to circumstantially prove the declarant's state of mind, [as discussed above]…. [A] declaration could be circumstantial evidence of the declarant's

knowledge of some fact.  .″  *Id.*  "[Another] nonhearsay purpose is to prove the effect of the declarations on the state of mind of the hearer or reader."  *Id.*

This too is borne out in the caselaw.  As every second or third-year law student is taught, "[h]earsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c):" *Wilson v. Sirmons*, 536 F.3d 1064, 1111 (10th Cir. 2008).  And although Rule 602 does not swallow up the affiant's need to comply with the hearsay rule, *see United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1132 (10th Cir. 2014), the affiant would truly have to be basing his affidavit on actual hearsay not within any exception for it to be excluded.  In *Wilson*, for example, the statement was not being "offered to show [Sergeant] Huff's motivation for stopping Mr. Wilson."  *Id.* (Huff testified that the reason he stopped Wilson was because Detective Meek told him the vehicle matched the description of one used in a homicide the night before.)  *Id. Accord United States v. Munoz*, 233 F.3d 1117, 1135 (9th Cir. 2000) ("Zech's testimony was not offered for its truth but to explain why Zech wrote the letters to the defendants requesting that they suspend further sales.").

Likewise, in *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1297 (10th Cir. 1998), while the hearsay evidence was ultimately excluded because it really was being asserted for its truth, the Court noted that "[a]n out-of-court statement is not hearsay under the Federal Rules of Evidence if it is offered to show its effect on the hearer of the statement."  *Id.* at 1297 (citing *United States v. Nieto*, 60 F.3d 1464, 1468 (10th Cir. 1995)).  *Accord Schindler v. Joseph C. Seiler & Synthes Spine Co.*, L.P., 474 F.3d 1008, 1011 (7th Cir. 2007)  ("a statement offered to show its effect on the person who heard the statement is not hearsay[]); *United States v. Castro-Lara*, 970 F.2d 976, 981 (1st Cir. 1992) (effect on future actions of listener).

Hearsay evidence may also be admitted to show why a person took investigatory steps (such as Relator looking for emails documenting billing records being sent around the office). *United States v. Barela*, 973 F.2d 852, 855 (10th Cir. 1992).   Business records are another commonly employed exception to the hearsay rule, which would cover anything Relator learned from the records of Cloud Peak.   *See Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1332 (10th Cir. 1984) (also admitting evidence as past recollection recorded).   In one case also involving the False Claims Act, the Eleventh Circuit held:

> Calhoon apparently cites [*United States v.*] *Race* [,632 F.2d 1114 (4th Cir.1980)] for the proposition that the testimony here was erroneously admitted because it constituted expert testimony on the meaning of the Medicare regulations in relation to whether claiming the advertising costs as "outreach" was unlawful. However, the government offered Hoffman's testimony about Shackelford's statements not for the truth of Shackelford's statements, but to prove that Calhoon was on notice that there was reason to question the propriety of his actions.   Therefore, the testimony was not hearsay and was relevant to whether Calhoon had knowingly filed false claims.

*United States v. Calhoon*, 97 F.3d 518, 533 (11th Cir. 1996).

Further, "[s]tatements offered to prove the listener's knowledge are not hearsay."  *United States v. Boyd*, 640 F.3d 657, 664 (6th Cir. 2011).  *Accord United States v. Barnett*, 945 F.2d 1296, 1301-02 (5th Cir. 1991) (hearsay content of tax seminars, in tax-protestor prosecution, properly admitted to show they were made and the effect they had on defendant's beliefs.)

Finally, regarding Hickey's state of mind, there is no question she read the Medicaid manuals. "Manuals are routinely admitted to show that a defendant has the knowledge, capability, and intent, to carry out the goals of a conspiracy."  *United States v. Stone*, 852 F. Supp.2d 820, 832 (E.D. Mich. 2012).  This would also logically apply here, even in the absence of a conspiracy.  Thus, even to the extent the relevant portions of the Pack Affidavit were

properly excluded, this evidence can replace any portion of the affidavit regarding mental state.

As to one example of Hickey's scienter, *see* First Leston Report, DE # 43-1 at 10.  It recites:

> Defendant Hickey, as the supervisor of the billing process, would be aware of: 1) The requirement that case management services be directed and authorized by a case manager. 2)The Cloud Peak cases for which authorized and directed case management services were approved; 3) The information required to submit claims to the Wyoming Medicaid system that would have a high likelihood of being paid. Hickey would also be aware that billing case management services to existing Cloud Peak patients would create a situation where multiple case managers are overseeing a case.

## III.   THIS COURT SHOULD EXAMINE PACK'S EXPERT'S SECOND REPORT

On August 30, 2017, Defendants filed a motion in limine to exclude the testimony of Relator's expert, Jeff Leston (DE # 86).  Plaintiff responded to that motion, which included a new expert report by Leston to address any alleged deficiencies in his first report.  (*See* DE # 91, at 4-5 (brief); DE # 96-1 (supplemental report).  But a strange twist took place.  The brief was teed up and ready to go during business hours on September 13, the deadline for its filing (this should be apparent from all the legal citation in it).  The Court filed its order on summary judgment (DE # 95) at 4:48 PM that day (exh. 1).  When counsel returned from an errand and saw this, the response brief to the motion in limine was filed at 5:54 PM. (exh. 2), to preserve the record.  The two documents almost literally "crossed in cyberspace."

Had this not occurred in the way it did, Relator would have quickly filed a motion to petition the Court to add Leston's second report to the summary judgment record, and give both sides an opportunity to make legal arguments as to how it affected what still would have been the pending motion.   "[T]he Federal Rules expressly contemplate the filing of supplemental affidavits. Rule 56(e), Fed. R. Civ. P. (providing that the court "may permit an affidavit to be supplemented . . . by additional affidavits").  *Lamoureux v. AnazaoHealth Corp.*, No. 03-cv-1382, 2010 U.S. Dist. LEXIS 99454, *7-*9, 2010 WL 3801611 (D. Conn. Sept. 22, 2010).

Leston would have been, and still is, willing to swear to the second report, if necessary, turning it into an affidavit.  Accordingly, as part of the Rule 59(e) process, Relator respectfully petitions the Court to consider Leston's second report.

### A.   LESTON'S FIRST AND SECOND REPORTS VALIDATE PORTIONS OF PACK'S AFFIDAVIT

Assuming for the sake of argument that the Court still strikes major portions of Relator's affidavit, Leston's second report provides an independent, admissible[2] source of much of the same information, untainted by hearsay.  The following shows how it does so.  Note that the second report predates the Court's evidentiary and summary-judgment rulings, so it cannot be a *post hoc* attempt to get the proverbial second bite at the apple.

> **Pack Aff., ¶ 6:**[3] During the periods at issue in this case, Psychosocial Rehabilitation groups were routinely held at Cloud Peak Initiatives, Inc.

> **Leston 2d Rpt., at 10:** Further guidance on who may provide Medicaid billable services is provided by the Medicaid procedure code search webpage. In particular, Ryan Legler's taxonomy, 172V00000x, is not allowed to provide Psychosocial Rehabilitation services, H2017, whereas, it is allowed to provide H2014. Furthermore, this would have been the case during 2011 and 2012 when Legler ran the Adult Psychosocial Rehabilitation group, as indicated by Hickey's affidavit and Exhibits A and B which are pages from the Medicaid procedure code search webpage with the copyright date of 2012.

> **Pack Aff., ¶ 9 (stricken):** Ryan Legler was not certified or licensed by the State of Wyoming to provide Psychosocial Rehabilitation services to individuals or to a group.

> **Leston 2d Rpt., at 7; Leston 1st Rpt., at 5:** Ryan Christopher Legler NPI: 1235424250 is listed in the NPPES Registry of providers as 172V00000X - Community Health Worker. There is no license number affiliated with his NPPES registration for the State of Wyoming. Mr. Legler is not certified or licensed to diagnose or treat patients.

---

[2] Mr. Leston is willing to put his first and second reports in affidavit form, as necessary and to the extent based on personal knowledge.

[3] Paragraph 6 is shown as stricken in the body of the Court's opinion (DE # 95, at 7), but not in the order (*id.* at 32).

**Leston 2d Rpt., at 9:** Chapter 2, Sections 1 and 2 specifically states that each Medicaid provider shall be licensed, provisionally licensed, or certified by the State of Wyoming to perform the specific services. As discussed above, Legler has no license or certification in the state of Wyoming according to the NPPES**.**

**Leston 2d Rpt., at 10 (*see supra*).**

**Pack Aff., ¶ 16 (stricken):** Psychosocial Rehabilitation Services require that the therapist document the progress of each client receiving the service.

**Leston 2d Rpt., at 11:** Progress notes shall be written for every contact billed to Medicaid[.] … Chapter 2, Section 10 of the Manual instructs that payback is required if insufficient documentation [exists] to demonstrate treatment that implements the treatment plan.

**Pack Aff., ¶ 19 (stricken):** McGowan rarely, if ever, attended the group.

**Leston 2d Rpt., at 7; Leston 1st Rpt., at 5:** Linda G. McGowan: The only The National Plan & Provider Enumeration System (NPPES) entry for a provider with the last name of McGowan and practice in Wyoming lists a NPI 1447499983 for N. McGowan with a primary address of 5020 CLARK RD SARASOTA, FL 34233-3231 and a practice address of 5020 CLARK RD SARASOTA, FL 34233-3231. The telephone number listed, 307-674-1668, is registered to Cloud Peak Initiatives. There is no Wyoming address listed on Dr. McGowan's NPPES entry.

**Leston 2d Rpt., at 12; Leston 1st Rpt., at 7:** [W]e have clear evidence that the provider (McGowan) was not in the same location as, and never provided service to the people receiving "group therapy," and that McGowan's professional qualifications were 'borrowed' for the purpose of higher reimbursement, and this was known by the Defendants.

Hickey would be aware that McGowan's National Provider Identifier was being used to bill Medicaid under false pretense. Hickey assigned Legler, and not McGowan, to facilitate the Skills Group session, knowing that no qualified therapist was facilitating the sessions. … There is evidence that McGowan had received emails with session notes from Legler for the skills sessions/group therapy. There is no record that Legler was in training of any kind for licensure and no evidence that McGowan was a supervisor to Legler in training to be a licensed therapist. Therefore, there is not a legitimate reason or evidence of one for Legler to send email meeting notes to McGowan….

**Pack Aff., ¶ 21 (stricken):** Upon investigation, I could only find a couple of emails between McGowan and Legler, causing me to believe that McGowan was deleting the emails from Legler after she had pasted the information into the electronic health record.

**Leston 2d Rpt., at 12; Leston 1st Rpt., at 12:** There is evidence that McGowan had received emails with session notes from Legler for the skills sessions/group therapy. There is no record that Legler was in training of any kind for licensure and no evidence that McGowan was a supervisor to Legler in training to be a licensed therapist. Therefore, there is not a legitimate reason or evidence of one for Legler to send email meeting notes to McGowan. McGowan would be aware of this.

**Pack Aff., ¶ 23 (stricken):** During the period of time that Legler ran the Psychosocial Rehabilitation group, Cloud Peak Initiatives, Inc. had a policy for employees to work ten-hours per day, Monday through Thursday.

**Leston 2d Rpt., at 14; Leston 1st Rpt., at 9:** Cloud Peak Initiatives had a documented "no Friday" policy in personnel documents, and it had been in place for enough time for all staff to know, so there was no chance of misinterpreting the policy. There is no other evidence of a Cloud Peak treating or case management staff member claiming to have treated patients on Fridays at the Cloud Peak office facility.

**Pack Aff., ¶ 32 (stricken):** I was informed by Lisa Brockman of the Wyoming Department [of Health] that Hickey was billing one of Foley's groups as individual therapy.

**Leston 2d Rpt., at 13; Leston 1st Rpt., at 8:** There is additional evidence that McGowan was billing for individual therapy sessions at the same time 'group therapy' sessions were ongoing. McGowan also states in the letter that she has "informed Sunshine that my individual clients should keep their appointments with me during the group." The email goes on to ask staff members to help remind clients of this if they are involved in some other activity, presumably the group. While the phrase "during the group" can be interpreted as "while group sessions are being conducted, but not necessarily the same actual time" or "during the same time as the group session", it is clear that McGowan intends to hold, or at least bill for, individual sessions *while group sessions are underway,* by asking staff to remind patients to attend them**.** [This leads to a legitimate inference that Foley's "groups" were billed the same way, as individual therapy.]

**Pack Aff., ¶ 33 (stricken):** I knew that billing group therapy as individual therapy would double the amount that would be received from Medicaid.

**Leston 2d Rpt., at 8:** H2014 is the code for Skills Training and Development. The current rate of pay is $7.50 per 15-minute unit. If the modifier for group, HQ, is added to the code, the rate is reduced by 50%, or to $3.75 per 15-minute unit.

**Pack Aff., ¶ 34 (stricken):** During the discovery process of this case, I have learned that Hickey billed all Psychosocial Rehabilitation groups without the code modifier that indicates group and all the claims were paid as individual services.

**Leston 2d Rpt., at 12; Leston 1ˢᵗ Rpt., at 8:** There is additional evidence that McGowan was billing for individual therapy sessions at the same time 'group therapy' sessions were ongoing. McGowan also states in the letter that she has "informed Sunshine that my individual clients should keep their appointments with me during the group." The email goes on to ask staff members to help remind clients of this if they are involved in some other activity, presumably the group. While the phrase "during the group" can be interpreted as "while group sessions are being conducted, but not necessarily the same actual time" or "during the same time as the group session", it is clear that McGowan intends to hold, or at least bill for, individual sessions *while group sessions are underway,* by asking staff to remind patients to attend them**.**

**Pack Aff., ¶ 35 (stricken):**   During 2010 and again in 2012, Hickey was providing targeted case management to clients who were not assigned to her.

**Leston 2d Rpt., at 16; Leston 1st Rpt., at 10-11:** Defendant Hickey certainly would not need to "…ascertain from the State Agency whether the individual[s] were already obtaining Medicaid case management services" as she was already billing for such services. In addition, there is also no evidence that:

> a) The assessment supporting the Targeted Case Management plan[s] delivered by Jim Craig were out of date; and,

> b) The individuals who reportedly received Targeted Case Management services from Defendant Hickey agreed to receive Targeted Case Management Services from Hickey; and,

> c) The individuals receiving Targeted Case Management Services from Defendant Hickey chose her as their provider.

**Pack Aff., ¶ 40 (stricken):**   Cloud Peak Initiatives, Inc. was reimbursed for Medicaid claims by submitting them to the Wyoming Medicaid Fiscal Agent by using a web portal.

**Leston 2d Rpt., at 7:** Because of the requirements under HIPAA for the operation of the Medicaid Management Information System ("MMIS"), states may contract with a private contractor normally selected through a competitive procurement process to operate the MMIS for the state. https://www.medicaid.gov/medicaid/data-and-systems/mmis/index.html *See also* 42 CFR § 433.111 (mechanized claims processing and information retrieval system). These private contractors are referred to as Medicaid Fiscal Agents. It is through the Medicaid Fiscal Agent that health care providers submit their claims to Medicaid and receive their payments from Medicaid. In this case, the Medicaid Fiscal Agent is Conduent State Healthcare, LLC("Conduent"). . . . According to the Complaint and interview of the Relator, Hickey was the only employee of

Cloud Peak with access to the Company billing system. Hickey had sole power and authority to 1) create claims based on information in the electronic health record for Cloud Peak Initiatives and 2) sign on to the secured State of Wyoming Provider Portal to submit claims electronically. [Note: this latter evidence after the ellipsis is only being introduced to bolster the proposition that there WAS a web portal, not anything concerning Hickey's involvement with it.]

**Pack Aff., ¶ 41 (stricken):**  Only Hickey had access to the web portal.

**Leston 2d Rpt., at 12; Leston 1st Rpt., at 7:** As the Cloud Peak employee with sole responsibility and access to the State of Wyoming billing system, Hickey submitted the claims to Wyoming Medicaid as Group Therapy. As the sole owner of Cloud Peak, she would also receive Explanations of Benefits from the Wyoming Medicaid program for these sessions detailing the billing codes, reimbursement rate, provider identifier[s], and dates of service.

**Pack Aff., ¶ 44 (stricken):**  The method of billing exercised by Hickey enabled her to oversee the work of all therapists and case managers employed by Cloud Peak Initiatives, Inc.

**Leston 2d Rpt., at 12; Leston 1st Rpt., at 7:**  Hickey would be aware that McGowan's National Provider Identifier was being used to bill Medicaid under false pretense. Hickey assigned Legler, and not McGowan, to facilitate the Skills Group session, knowing that no qualified therapist was facilitating the sessions. As the sole owner of Cloud Peak, Hickey presumably promoted them as Skills Groups. As the Cloud Peak employee with sole responsibility and access to the State of Wyoming billing system, Hickey submitted the claims to Wyoming Medicaid as Group Therapy. As the sole owner of Cloud Peak, she would also receive Explanations of Benefits from the Wyoming Medicaid program for these sessions detailing the billing codes, reimbursement rate, provider identifier[s], and dates of service. Knowing the she assigned Legler to facilitate the sessions, and that the sessions were billed and paid as if McGowan facilitated them, Hickey would be guilty of fraud.

**Pack Aff., ¶ 45 (stricken):**  Cloud Peak Initiatives, Inc. was accredited by the Commission on Accreditation of Rehabilitation Facilities ("CARF").

**Defendants' 1st Amended Answer, DE # 55 at 15** (referring to things Defendants accused Relator of doing):  Making an unsubstantiated complaint against Cloud Peak to CARF International, the nonprofit accreditor for rehabilitation providers, in or around February 2013.

**Pack Aff., ¶ 47 (stricken):** Through instruction by CARF and other sources, Hickey was well aware that the federal law regarding Medicaid benefits preempted any state law or state regulations.

**Leston 2d Rpt., at 12:** Medicaid is authorized and governed by Title XIX of the Social Security Act. Section 1396a requires that each state that participates in the Medicaid program have a state plan for medical assistance. <u>These plans must conform to the federal statutes and regulations</u>. In Wyoming, the Department of Health is the agency that oversees the Medicaid program in accordance with the Social Security Act, the Wyoming Medical Assistance and Services Act and the Wyoming Administrative Procedure Act.  (Emphasis added.)

[Combine this with admitted paragraph 46, in which Relator states he "was present during instruction to Hickey by CARF[,]" and the law recited *supra* that affiants can have personal knowledge of another's state of mind.]

**Pack Aff., ¶ 47 (stricken):** Hickey knew that groups should be billed with the code modifier HQ.

**Leston 2d Rpt., at 8-9** (setting forth the regulations for the HQ modifier as embodied in manuals.  Manuals are routinely admitted to show that a defendant has the knowledge, capability, and intent, to carry out the goals of a conspiracy." *United States v. Stone*, 852 F. Supp.2d 820, 832 (E.D. Mich. 2012).  Further, knowledge of the law is imputed, and ignorance of it is no excuse.

## IV.   THIS COURT SHOULD EVALUATE THE CASE IN LIGHT OF THE SUPPLEMENTAL AUTHORITY PRESENTED PRIOR TO THE ISSUING OF THE ORDER ON THE MOTION FOR SUMMARY JUDGMENT

On September 13, 2017, just four hours before this Court issued its order granting summary judgment, Plaintiff noticed supplemental authority that bore directly on the issue of whether Ryan Legler was able to facilitate an Adult Psychosocial Rehabilitation group with McGowan only being available by telephone or in the building billing.  In particular, Plaintiff directed the Court's attention to the Wyoming Department of Health Rules, Chapter 3, which governs mental health personnel standards and policies.  WDOH Rule Chapter 3, Section 2 (d) – (e)  reveals that Ryan Legler was not qualified to facilitate any group as a solo leader but was only "[a]llowed to work as an aide to a mental health professional or mental health counselor who is directly delivering the mental health treatment services to clients."

Accordingly, if this Court admits the portions of Relator's affidavit, based upon his knowledge obtained as director of Cloud Peak Initiatives, Inc., that have to do with Legler's

qualifications and his knowledge of how the Psychosocial Rehabilitation group was facilitated between the time of David Peterson and Claudia Wellborn, then it becomes clear that Hickey, having been confronted by Pack, was at least reckless in her billing OF Medicaid without confirming that McGowan was directly offering the services.

 Notice that Hickey never states in her affidavits that Legler was qualified to run the group on his own or that McGowan was present in the group.  This creates a genuine issue of material fact for the jury as to Hickey's scienter, whether it be actual knowledge or reckless indifference.  As the sole owner of the business and the only person billing, Hickey had a duty to ensure that what she was billing for complied with the rules and regulations and that the submission contained no false statements.

This Court relied upon the statements made by Christine Stickley in a hearsay document based upon personal opinion regarding the ambiguity of the manuals and regulations. Accordingly, the Stickley report is not admissible on that basis.  And it was also a document based upon an entirely different evidentiary burden (beyond a reasonable doubt in a criminal proceeding versus a preponderance of the evidence in a civil fraud case) and accordingly, even if it were otherwise admissible it cannot be relied upon in this case, due to the purpose of the preparation of the document was very different than what we are dealing with here.

## <u>CONCLUSION</u>

For the foregoing reasons, the motion for reconsideration should be granted, the excluded evidence should be admitted, the summary judgment order should be vacated, and a new round of dispositive motion briefs should be ordered.

DATED this 10th[th] day of October 2017.

Respectfully submitted,

/s Letitia Abromats/ (7-5262)
Attorney for Plaintiff
750 U.S. Hwy. 14
Greybull, WY  82426
765-4518
labromats@abromatslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that RELATOR'S BRIEF IN SUPPORT OF MOTION TO RECONSIDER

UNDER FRCP 59(E) was served on the attorneys for Defendants and on the United States

attorney on October 9, 2017 via CM-ECF, said counsel being:

Amanda K. Roberts
Molly H. Dow

Lonabaugh and Riggs, LLP
50 E. Loucks
P.O. Drawer 5059
Sheridan, Wyoming 82801

Mark Klaasen

Assistant United States Attorney
P.O. 668
Cheyenne, Wyoming 82003

/s/Letitia Abromats/