IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| ROY PACK, | |
| Plaintiff, | |
| vs. | Case No: 15-CV-185-F |
| MAUREEN HICKEY and CLOUD PEAK INITIATIVES, INC., a Wyoming corporation, | |
| Defendants. | |

## ORDER GRANTING DEFENDANTS' MOTION FOR ATTORNEYS' FEES

This matter is before the Court on Defendants' Motion for Attorneys' Fees. (Doc. 106). The Court has considered the motion, response, reply, and surreply, and is fully informed in the premises. For the following reasons, the motion is GRANTED.

### BACKGROUND

Cloud Peak Initiatives, Inc. ("Cloud Peak") is a private mental health facility located in Sheridan, Wyoming. (Doc. 26 [Pl.'s First Am. Compl.] at 2, ¶ 7). Relator, Roy Pack ("Pack") was the CEO, Vice President, and founder of Cloud Peak from March of 2002 until his termination on February 7, 2013. (*Id.*). Since 2005, Defendant Maureen Hickey ("Defendant" or "Hickey") has been the president, owner, and sole shareholder. (*Id.* ¶ 8).

1

On August 26, 2016, Pack filed his First Amended Complaint with the Court, alleging false claims under 31 U.S.C. § 3729. (*Id.* at 7–9, ¶¶ 42–64). Pack contended that Hickey engaged in Medicaid fraud. (*See id.* at 2, ¶ 10). Specifically, Pack "became concerned about Medicaid fraud by Hickey because she was the sole person responsible for submitting and reviewing for errors concerning all Medicaid billing and no one else, not even [Pack], had access to the web portal or billing procedures." (*Id.*). According to Pack, Hickey committed three types of false billing. (*Id.* at 3–6, ¶¶ 14–39).

First, Pack asserted Hickey improperly billed skills groups as therapy groups. (*Id.* at 3). "A skills group is billed at approximately $12.00 per hour per person, whereas a therapy group, requiring a licensed therapist, is billed at approximately $40.00 per hour per person." (*Id.* at 4, ¶ 25). Next, Pack asserted Hickey improperly billed group therapy sessions as individual therapy sessions. (*Id.* at 5). Pack claimed Hickey billed an afternoon group therapy session "as individual therapy for two clients at a rate exactly double that of group therapy for two clients." (*Id.* at ¶ 32). Finally, Pack claimed Hickey "repeatedly engaged in, and billed for, direct targeted case management services without documentation of medical necessity by a licensed therapist, which is not permitted by Medicaid." (*Id.* at 6, ¶ 35).

In response to Pack's First Amended Complaint, Defendants filed several counterclaims, including breach of fiduciary duty, destruction of property, libel, malicious prosecution, abuse of process, intentional infliction of emotional distress, and punitive damages. (Doc. 55 [First Am. Answer & Countercl.] at 20–24, ¶¶ 46–78). However, on August 17, 2017, the Court dismissed Defendants' destruction of property,

2

libel, malicious prosecution, and punitive damages counterclaims. (Doc. 73 [Order] at 21). On September 13, 2017, the Court granted Defendants' motion for Summary Judgment and dismissed Pack's First Amended Complaint with prejudice. The Court entered Judgment in Defendants' favor on September 19, 2017. (Doc. [95] at 32). On September 25, 2017, in a Statement of Consultation, Pack communicated his intent to file a FED. R. CIV. P. 59(e) Motion for Reconsideration. (Doc. 106). As a result, the parties agreed that any motion for attorney fees would be premature until a decision was rendered on the Rule 59(e) Motion. (*Id.*). Pack did not file his Motion to Reconsider until October 10, 2017. On October 17, 2017, Defendants filed a Motion for Attorneys' Fees pursuant to FED. R. CIV. P. 54(d), 31 U.S.C. § 3730(d) and (g), and 28 U.S.C. § 2412(b) and (c) seeking $92,592.75 in attorney fees incurred defending this case. On October 23, 2017, the Court stayed the motion for attorney fees pending a ruling on the Rule 59(e) Motion. The Court dismissed Pack's Rule 59(e) Motion for Reconsideration on December 4, 2017. (Doc. 115).

## LEGAL STANDARD

Under the Federal Claims Act (FCA) a Court may, "award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C.A. § 3730(d)(4).

While the FCA does not define "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment," the Act's legislative history suggests that the standard for § 3730(d)(4) is analogous to that used for claims for attorney fees brought

3

under 42 U.S.C.A. § 1988. *U.S. ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1055 (10th Cir. 2004). The Tenth Circuit has articulated the standard for determining whether a plaintiff should be ordered to pay defendants' attorneys' fees:

> The plaintiff's action must be meritless in the sense that it is groundless or without foundation. The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees . . . [A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.

*Houston v. Norton,* 215 F.3d 1172, 1174 (10th Cir. 2000) (citing *Hughes v. Rowe,* 449 U.S. 5, 14–16 (1980)). The Supreme Court clarified, "a district court may in its discretion award attorney's fees to a prevailing defendant . . . upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 421 (1978). However, "[a] successful defendant . . . must demonstrate that the plaintiff has misused his statutory privilege and distorted the intent of the legislation." *Id.* at 419–20.

## DISCUSSION

On October 17, 2017, Defendants filed a Motion for Attorneys' Fees seeking $92,592.75. (Doc. 106). Defendants claim an award of attorney fees is appropriate because Pack brought the action for the purpose of harassment and with vexation. Defendants point to Pack's involvement in other litigation against Hickey regarding property Hickey and Pack obtained during their former relationship and Pack's attempt to obtain custody of their child. Defendants also argue that Pack's claims were clearly frivolous.

4

Pack responds that the action was not frivolous, vexatious, or harassing because Pack, "worked at and was CEO of Cloud Peak, maintained the client database after his termination, and a detailed analysis of the data was performed by counsel and presented to court." (Doc. 116 at 3). Pack further asserts that lack of deposition testimony does not make a FCA claim frivolous and Relator may rely on exhibits, so long as they are not fabricated, distorted, or meritless. (*Id.* at 4.) Additionally, Pack states the fact that an attorney took the case should mitigate attorney fees. (*Id.* at 8.)

***Deadline to File Attorney Fees***

In his Surreply, Pack argues for the first time that Defendants filed their motion for attorney fees after the allotted 14-day period after entry of Summary Judgment (*See* FED. R. CIV. P. 54(d)(2)(B)(i)). Pack states:

> [T]he Judgment in this case was handed down on Sept. 19, 2017 (DE # 102), but the motion for fees was not filed until October 17 (DE # 106) . . . This was fatal to Defendants' fee motion, because the stipulation to delay briefing was entered into and granted (DE ## 108, 111) after Defendants' fee motion was already untimely.

(Doc. 122). Pack's statements are incorrect. Pack ignores the Statement of Consultation between the parties that occurred on September 25, 2017. (Doc. 106). The Statement of Consultation is not only documented in Defendant's Motion for Attorneys' Fees, Pack also cites to it in his Surreply. (*Id.*).

## STATEMENT OF CONSULTATION

> Pursuant to L.R. 54.3(a) and (c), the moving party certifies that on **September 25, 2017,** Amanda K. Roberts consulted by email with Philip Abromats (as a representative of Letitia Abromats), as well as by telephone with Letitia Abromats. **The parties were unable to reach an agreement regarding the payment of attorneys' fees. Notably, in his September 25,**

5

> **2017 email, Philip Abromats, as a representative of Letitia Abromats, asserted that Relator intended to file a Motion to Reconsider under Fed. R. Civ. P. 59(e) and any motion for attorneys' fees would be premature until a decision was rendered on the same.** At least three district courts within the 10th Circuit have found that "**a timely Rule 59(e) motion tolls the time to file a motion for costs or attorney fees under Rule 54(d), because the underlying judgment is no longer final upon the filing of a Rule 59(e) motion.**" *Scottsdale Ins. Co. v. Tolliver*, No. 04-CV-0227-CVE-FHM, 2009 WL 523108, at *2 (N.D. Okla. Mar. 2, 2009) (citing *RMA Ventures California v. Sunamerica Life Ins. Co.*, 2008 WL 793333 (D.Utah Mar. 25, 2008); *U.S. Surgical Corp. v. Orris*, Inc., 47 F.Supp.2d 1270, 1271 (D. Kan.1999)). Accordingly, **Defendants assert that this motion may be considered by the Court <u>after</u> a decision is rendered on the Rule 59(e) motion, or it may be considered an interim motion for attorney's fees pursuant to L.R. 54.3(f).**

(Doc. 106 at 2) (emphasis added.) This consultation occurred six days after the entry of judgment, which was fully within the 14-day period allotted by FED. R. CIV. P. 54. Further, the Statement of Consultation provides an agreement between the parties that due to Pack's intent to file a Motion to Reconsider under FED. R. CIV. P. 59(e), the time to file an attorney's fee motion was tolled. Pack did not file the Motion to Reconsider until October 10, 2017. Seven days later, on October 17, 2017, Defendants filed a Motion for Attorneys' Fees, which was still fully within the 14-day period allowed by FED. R. CIV. P. 54.

The Court finds Pack's argument regarding timing improperly ignores the Statement of Consultation between the parties concerning the timing of the Motion for Attorney Fees. Furthermore, Pack neglected to raise this issue in his initial Brief in Opposition to Defendants' Motion for Attorneys' Fees (Doc. 116; Doc. 122) and instead, improperly raised the issue in his Surreply, which was granted on limited grounds to give Pack an opportunity to respond to the admissibility of the settlement offer. (Doc. 121).

6

The Court will not consider arguments raised for the first time in a surreply. *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) (citing *Reedy v. Werholtz,* 660 F.3d 1270, 1274 (10th Cir. 2011)).

For all of these reasons, the Court finds Defendants' Motion for Attorneys' Fees was timely and appropriate.

### *Clearly Frivolous, Vexatious, or Harassing Claims*

The next issue for the Court to decide is whether Defendants are entitled to attorney fees in this action. The Court may award attorney fees and expenses if the "defendant prevails in the action," and the Court finds Pack's claims meet the *Christiansburg* standard of "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment". 31 U.S.C.A. § 3730(d)(4). Since Defendants have prevailed, the remaining issue before the Court is whether Pack's claims are "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." While the *Christiansburg* standard is difficult to meet, the Court is instructed to review the entire course of litigation in determining whether attorney fees may be awarded. *Grynberg*, 389 F.3d at 1059.

During the course of litigation, the Court found Pack failed to offer evidence showing the existence of a dispute of material fact. This lack of evidence supports the frivolity and harassing nature of Pack's claims. The Court granted summary judgment after finding Pack failed to show a genuine dispute of material fact regarding his three claims. Pack provided no evidence to suggest Hickey "[had] actual knowledge of the information," "[acted] in deliberate ignorance of the truth or falsity of the information,"

7

or "[acted] in reckless disregard of the truth or falsity of the information." 31 U.S.C. §3729(b)(1)(A); (Doc. 95 at 14–24). Additionally, Pack failed to provide any evidence showing Hickey knowingly submitted false claims related to billing for: (1) a Skills Group as a Therapy Group (*Id*. at 14–25); (2) Group Therapy as Individual Therapy (*Id*. at 25–27); or (3) Unauthorized Direct Targeted Case Management. (*Id*. at 27–30). The Court also struck much of Pack's affidavit as lacking personal knowledge and being hearsay and speculation.

Defendants provided Pack's deposition in support of the motion for summary judgment. (Doc. 61-1). In his deposition, Pack states that he was responsible for incorporating Cloud Peak Initiatives in 2005, but it was put in Hickey's name because he had bad credit after bankruptcy and they did not want that to affect the business. (Doc. 61-1 at 2 [Pack depo. at 6]). Pack acknowledged that after he was fired from Cloud Peak he locked the system and changed the passwords for the TheraScribe program, knowing that it would slow down the process. (*Id*. at 14 [Pack depo. at 56]). In response to questions about whether he had a copy of the TheraScribe database and other documents, Pack claimed that he no longer had them in his possession because he turned them over to the attorneys on the case, but that the attorneys were not his agents. (*Id*. at 16–17 [Pack depo. at 64–66]). When asked why he had concerns with Cloud Peak's Medicaid billing practices, Pack responded:

> On February 7th, I got on a plane and I flew to Tacoma, Washington to my office out there, for the record label, thinking that everything in my life was fine. I woke up the next morning to my cell phone disconnected and reported stolen. My bank cards reported stolen and name taken off the accounts. Nobody that worked for me would answer my phone call until I

> finally got ahold of Claudia Wellborn and she said, "We've been instructed that if we talk to you we'll be fired immediately on the spot," and then hung up on me. I was left stranded in Washington. Had I not come up -- because I didn't have any cash -- with $300 out of my pocket to take an emergency flight back to find out what was going on with my life and my company, which had now ended, to getting nothing more than the clothes on my back the next day and grabbing my gun collection before being thrown out of the house, that I built, by the sheriffs; and being told I would be arrested for trespassing if I ever came back. And still I didn't know what was going on. No, I did not trust anything that happened prior to that for at least a year involving billing or anything else.

(Doc. 61-1 at 19 [Pack depo. at 75]). Pack further stated that during this time, he noticed that Hickey would refer to everything as being hers and also the billing jumped up from where it should have been. (*Id.* [Pack depo. at 76]). In his deposition, Pack complained about Hickey taking all his stage and sound equipment through the injunction and no trespass orders. (*Id.* at 20 [Pack depo. at 79]). He also complained that prior to Hickey locking him out, he believed he was one of the owners of Cloud Peak. (Doc. 61-1 at 22 [Pack depo. at 88]).

Regarding the documents in this case, Pack consistently said that he had not been able to review them, and could not point to a single document to support his claim related to Foley's improper billing, except that he relied completely on Lisa Brockman's statements.[1] (Doc. 61-1 at 21–22 [Pack depo at 83, 85, 86, and 87]). In fact, Pack testified that he had no idea about the up-coding by Foley, but it was something Medicaid alerted him too. (Doc. 61-1 at 23 [Pack depo. at 89, 92]). However, Pack failed to provide any evidence from Medicaid regarding these charges.

---

[1] Despite this reliance, Pack did not obtain any sworn testimony from Lisa Brockman to support his claims in this case.

9

It is clear from the filings and evidence that this case arose from a very acrimonious split between Hickey and Pack. Pack felt wronged by the property settlement and his termination from Cloud Peak, which he believed he co-owned with Hickey. It is also clear from Pack's deposition testimony that he could not identify a proper basis for any of his claims. He could not point to any records to support his claims, because he had not reviewed them. Rather, he relied on the statements of Lisa Brockman, but failed to provide any testimony from Lisa Brockman to support his claims. As an example, Pack claimed Hickey billed group therapy session as individual therapy sessions because she failed to include the HQ group modifier to the billing for H2017 claims. However, the 2017 Medicaid manual did not provide for the use of the HQ modifier for H2017 claims. (Doc. 77 at 6 [Excerpts from 2017 Manual]).[2] Additionally, even at the summary judgment hearing, Pack's claims were evolving and changing. (Doc. 95 at 17, 28–29).

More significantly, despite alleging Hickey knowingly filed false claims to Wyoming Medicaid, Pack failed to depose Hickey. He also failed to depose Legler, McGowan, and Foley, who all would have had relevant information regarding these claims. Additionally, as the Court previously stated, Pack failed to provide sworn testimony in any form from Lisa Brockman, whose statements Pack relied on almost completely in deciding Hickey had engaged in improper billing. Instead, Pack relied on conclusory statements, hearsay, speculation, and his own hearsay allegations. The lack of an evidentiary basis for the allegations in deposition testimony and interrogatory answers

---

[2] While this was the 2017 Manual, no one provided the relevant 2011-2013 Manuals to show a contrary position.

justifies an award of attorney fees. *See In re Nat. Gas Royalties Qui Tam Litig.*, 845 F.3d 1010, 1024 (10th Cir. 2017), *cert. denied sub nom. U.S. ex rel. Grynberg v. Agave Energy Co.*, 138 S. Ct. 84 (2017).

### *Admissibility of the Settlement Offer*

Hickey also claims that the frivolous and vexatious nature of this litigation is supported by Pack's settlement offer, which Hickey characterizes as an attempt to get Hickey to capitulate to demands Pack made in prior litigation between the parties. Significantly, Pack offered to settle this qui tam action if Hickey dismissed her claims for contempt in the child custody action, filed a satisfaction of judgment in the civil case for which there was still an outstanding judgment, provide Pack certain personal items in Hickey's possession, provide Pack the coffee shop equipment and furniture, and agree to certain requirements in the child custody plan. (Doc. 107-6). Pack vehemently disputes the inclusion of the settlement agreement under FED. R. EVID. 408(a), which excludes evidence of a settlement offer when used "to prove or disprove the validity or amount of a disputed claim."

Defendants argue that FED. R. EVID. 408(a) does not exclude the settlement offer as evidence in this proceeding because the question of whether claims are frivolous, vexatious, or harassing does not pertain to the "validity or amount of a disputed claim". FED. R. EVID. 408 (a). Defendants further assert that Rule "408 does not impose an absolute ban on the admissibility of settlement offers, but instead limits the purposes for which they may be admitted." *See* FED. R. EVID. 408(b) advisory committee's notes 2011. Specifically, Rule 408(b) provides: "The court may admit this evidence for another

11

purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Defendants argue that settlement offers can be admitted when determining attorney's fees. For example, settlement offers have been admitted for purposes other than determining the validity of claims the agreement was meant to settle, such as to demonstrate motive or the reasonableness or unreasonableness of claims. *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 293 (2nd Cir. 1999); *Trebor Sportswear Co. v. Ltd. Stores, Inc.*, 865 F.2d 506, 510 (2nd Cir. 1989); *Resolution Trust Corp. v. Blasdell*, 154, F.R.D. 675, 681 (D. Ariz. 1993).

While Pack attempts to distinguish these cases, the Court finds Defendants' position persuasive. Pack's August 31, 2017 settlement offer pertains to personal property and the custody battle between Hickey and Pack. (Doc. 107-7). The settlement offer is not related to Pack's claims, which arise from Pack's concern that Hickey engaged in Medicaid fraud. Furthermore, the settlement offer is not being used to "prove or disprove the validity or amount of a disputed claim." FED. R. EVID. 408(a). Rather, it is being used as evidence to support Defendants' claim that Pack brought this action for an improper purpose. The Court finds this argument is persuasive and will consider the settlement agreement in determining whether Pack's action was frivolous or vexatious.[3]

---

[3] The Court notes that while the settlement agreement bolsters the Court's finding that Pack's claims were frivolous and vexatious, the Court would come to the same conclusion without the inclusion of the settlement agreement.

After considering the entire course of this litigation, the Court finds that Pack's claims lack evidentiary support and were clearly frivolous, vexatious, and harassing. Therefore, the Court finds that Defendants are entitled to attorney fees in this matter.

*Fee Hearing*

Pack asserts that an award of attorney fees requires a fee hearing. (Doc. 116). Defendants counter that because Pack did not challenge the amount or reasonableness of Defendants' attorney fees requested in his initial opposition, Pack waived any right to do so, pursuant to U.S.D.C.L.R. 54.3(d). Specifically, Local Rule 54.3(d–e) states, "[t]he opposing party shall file objections to the fee request, supported by affidavits or other evidence, within fourteen (14) days after the filing of the claim for attorney's fees. The opposing party shall also submit a memorandum brief supporting the objections." The Rule adds, "[f]ailure to timely file a motion for or an objection to an award of attorney fees shall constitute a waiver thereof unless the Court grants relief from the waiver upon good cause shown." Pack failed to provide any basis for a hearing on the fee request. Pack did not offer any evidence that the hourly fee is not appropriate or that the fees generated were unreasonable. Additionally, Pack had ample time to dispute the amount of the fee award based on the extension the Court granted to delay the response until the Court ruled on Pack's motion to reconsider. Accordingly, the Court finds that a hearing is not necessary or warranted in this case and Pack waived the right to challenge the reasonableness of attorney's fees in this case.

13

*Reasonableness of Attorney's Fees Requested*

The next issue for the Court is to determine whether the requested amount for attorney fees is reasonable.

> "To determine a reasonable attorneys fee, the district court must arrive at a 'lodestar' figure by multiplying the hours plaintiffs' counsel reasonably spent on the litigation by a reasonable hourly rate." *Jane L. v. Bangerter*, 61 F.3d. 1505, 1509 (10th Cir. 1995). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Mares v. Credit Bureau of Raton*, 801 F.2d. 1197,1201 (10th Cir. 1986) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933 (1983)).

*Case v. Unified Sch. Dist. No. 233, Johnson City., Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998).

The Court finds that Defendants provided sufficient evidence to support their fee request. The Court also finds Defendants' counsel rate of $170-$200/hour for attorney time and $95.00 an hour for paralegal time is reasonable. Additionally, the hours spent on this case, given the amount of documentation and necessary filings, is also reasonable. For all these reasons, the Court finds that Defendants' requested attorney's fees are reasonable and the Court will award Defendants' attorney's fees in the amount of $92,592.75.

## CONCLUSION

For the all above stated reasons, the Court finds Pack's claims were clearly frivolous and clearly vexatious, justifying the award of attorney fees. The Court also finds Pack failed to establish that an evidentiary hearing is necessary in this matter. Finally, the Court finds that $92,592.75 is a reasonable amount of attorney's fees.

14

IT IS ORDERED that Defendants' Motion for Attorneys' Fees (Doc. 106) is GRANTED.

IT IS FINALLY ORDERED that Judgment is entered against Relator Roy Pack in favor of Defendants Maureen Hickey and Cloud Peak Initiatives, Inc., in the amount of $92,592.75 for reasonable attorney's fees in this case.

Dated this 6 day of April, 2018.

_____
NANCY D. FREUDENTHAL
CHIEF UNITED STAES DISTRICT JUDGE